UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE MARTIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 09-1387 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER

Now before the Court is Petitioner George Martin's ("Martin") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Martin's motion [#1] is DENIED IN PART.

## BACKGROUND

On April 15, 2008, by grand jury indictment, Martin was charged with six counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and one count of access device fraud in violation of 18 U.S.C. § 1029(a)(1) and (2). On July 31, 2008, Martin entered a blind plea of guilty to Count 6, wire fraud in violation of 18 U.S.C. §§ 1343 and 2. On November 20, 2008, Martin was sentenced to 37 months of imprisonment and 5 years of supervised release, and the Government's oral motion to dismiss Counts 1-5 and 7 was granted by the Court. Judgment was entered against Martin on November 24, 2008, and he did not file a direct appeal.

Martin was born in Sierra Leone and came to the United States from Ghana as a refugee in 2004. At the time he committed the offense for which he was sentenced, he was in the United States as a legal resident alien. Martin filed the instant § 2255 Motion raising three issues: 1) ineffective assistance of counsel in violation of the Sixth Amendment for counsel's alleged

1

failure to apprise Martin more fully of the immigration consequences of his guilty plea, 2) the Court failed to inform Martin of possible immigration consequences in violation of Federal Rule of Criminal Procedure 11, and 3) ineffective assistance of counsel in violation of the Sixth Amendment for counsel's alleged failure to notify him of his right to contact his consulate in violation of the Vienna Convention. The Government filed its Response, and the parties submitted supplemental briefs at the direction of the Court because of a recent Supreme Court case relevant to the issues raised in Martin's § 2255 Motion. This Order follows.

## DISCUSSION

A prisoner may bring a § 2255 motion where he claims that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a); *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (§ 2255 relief only available where there was an error of law that was jurisdictional, constitutional, or resulted in a complete miscarriage of justice). Federal courts lack power under § 2255 to rectify errors that fall short of "vitiating the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Broadway v. United States*, 104 F.3d 901, 903 (7th Cir. 1997) (internal citation omitted).

Because a § 2255 motion cannot be used as a substitute for a direct appeal, a § 2255 petitioner is barred from raising: 1) issues that were raised on direct appeal, absent a showing of changed circumstances, 2) nonconstitutional issues that could have been raised on direct appeal but were not, and 3) constitutional issues that were not raised on direct appeal, unless the petitioner can show both cause for the procedural default and actual prejudice from the failure to

appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205 (1995); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 719-20 (7th Cir. 1994).

Here, Martin attempts to show cause for his procedural default by arguing that his counsel was ineffective. Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). The seminal case on ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88; *Wyatt v. United States*, 574 F.3d 455, 458-59 (7th Cir. 2009). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Martin must satisfy both prongs of the test in order to meet his burden, and a finding against him on either prong ends the inquiry. *Id.* at 697 ("there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one").

## I.    Immigration Consequences of Guilty Plea

Martin argues that his counsel was ineffective for failing to advise him more fully on the immigration consequences of his guilty plea, and that counsel failed to take action to shield him from mandatory deportation. Martin further argues that he received misleading information that

3

he would not face immigration consequences and that if he had been advised of those consequences, he would not have pled guilty. In his Traverse and supplemental brief, Martin argues that Strickland's two-part test governs ineffective assistance of counsel claims, and that the "collateral consequences" rule is incompatible with the Sixth Amendment. Respondent argues that Martin's position - that he received ineffective assistance of counsel due to counsel's alleged failure to advise him of the immigration consequences of his guilty plea - is without support. Respondent cites to Seventh Circuit cases which provide that counsel's failure to inform a client as to the immigration consequences that may result from a guilty plea does not alone deprive the client of effective assistance of counsel. *See United States v. George*, 869 F.2d 333, 338 (7th Cir. 1989); *Santos v. Kolb*, 880 F.2d 941, 945 (7th Cir. 1989).

In *George*, the petitioner brought a § 2255 motion arguing ineffective assistance of counsel due to counsel's alleged failure to inform the petitioner that his guilty plea could subject him to deportation. 869 F.2d at 333-34. The petitioner had been properly advised of the immigration consequences of his guilty plea after he plead, but before sentencing. *Id.* at 336. The Seventh Circuit explained that "While the Sixth Amendment assures an accused of effective assistance of counsel in 'criminal prosecutions,' this assurance does not extend to collateral aspects of the prosecution." *Id.* at 337. The Seventh Circuit explained that it would not hold as a matter of law that counsel's failure to inform a client of immigration consequences of a guilty plea, without more, amounted to less than professionally competent assistance under *Strickland*. *Id.* at 338. Similarly, in *Santos*, the petitioner brought a § 2254 petition alleging ineffective assistance of counsel for counsel's alleged failure to advise him of immigration consequences of a conviction and for counsel's alleged failure to seek judicial recommendation against

4

deportation. 880 F.2d at 942. The *Santos* court cited *George* and cases in other circuits to support its holding that counsel's failure to inform the petitioner of the immigration consequences of his guilty plea did not deprive him of effective assistance of counsel as guaranteed by the Constitution. *Id.* at 944, 945. *See also Jimenez v. United* States, 154 F. App'x 540, 541 (7th Cir. 2005) (noting that, like other courts, the Seventh Circuit has concluded that possible immigration consequences of a guilty plea are collateral, not covered by the Sixth Amendment, and so failure of counsel to advise of those consequences is not ineffective assistance of counsel).

In a recent Supreme Court case, *Padilla v. Kentucky*, the defendant brought a motion for postconviction relief in state court alleging that his counsel not only failed to advise him of the immigration consequences of his guilty plea, but also gave him erroneous advice about those immigration consequences. 130 S.Ct. 1473, 1478 (Mar. 31, 2010). The Supreme Court considered changes in immigration law and the expansion of deportable offenses, concluding that deportation may be the most important part of the penalty that noncitizen defendants may experience when they plead guilty to certain crimes. *Id.* at 1479-80. The Court further concluded that distinguishing between collateral and direct consequences of a criminal conviction is "ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation" and that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 1482. The Court determined that the petitioner had adequately alleged the first prong of *Strickland*, constitutionally deficient counsel, where counsel could have easily determined the plea would make the petitioner eligible for deportation, deportation was presumptively mandatory, and the advice given was incorrect. *Id.* at 1483-84.

In the end, the Supreme Court held that counsel must inform a client of whether the client's plea includes a risk of deportation. *Id.* at 1486. The question of whether the petitioner was prejudiced by counsel's constitutionally deficient performance was not before the Supreme Court and so it did not reach that question. *Id.* at 1487.

Here, the arguments Martin makes in his supplemental brief in support of his claim of ineffective assistance of counsel echo the Supreme Court's discussion in *Padilla v. Kentucky*. However, at the time Martin plead guilty and was sentenced, *Santos* and *George* remained binding upon the issue of whether counsel's alleged failure to inform a defendant of the possible immigration consequences of a guilty plea amounted to ineffective assistance of counsel. The Government contends that *Padilla v. Kentucky* announced a new rule of criminal procedure that does not apply retroactively to cases on collateral review. *See Teague v. Lane*, 489 U.S. 288, 309-10 (1989) (stating that "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality . . ." and holding that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to cases on collateral review which have become final before the new rules are announced").

A "new rule" under *Teague* is one that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301; *see also Butler v. McKellar*, 494 U.S. 407, 412 (1990). In *Padilla v. Kentucky*, the Supreme Court considered the first prong of *Strickland* and discussed how prevailing professional norms suggest that counsel advise their clients of the possible deportation risks following a guilty plea. 130 S.Ct. at 1482. The Supreme Court also rejected the position that its holding should be limited to affirmative misadvice of

counsel, noting that it is the "critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Id.* at 1484 (citing *Libretti v. United States*, 516 U.S. 29, 50-51 (1995)). The *Padilla* case likely did not break new ground or impose new obligations given the Supreme Court's emphasis on *Strickland*, prevailing professional norms, and the "long recognized" importance of the plea negotiation phase. *Id.* at 1482-86; *see also Osagiede v. United States*, 543 F.3d 399, 408 n. 4 (7th Cir. 2008) (explaining that *Teague* presented no problem in a case where the defendant argued ineffective assistance of counsel for a Vienna Convention Article 36 violation because "counsel's duty to know the applicable law, at least when it matters to his client's defense, has been clearly established by *Strickland* and its progeny"). *Padilla v. Kentucky* therefore applies to Martin's claim of ineffective assistance of counsel for his counsel's alleged failure to fully inform him of the possible immigration consequences of his guilty plea.

The Government argues that under *George* and *Santos*, counsel's failure to inform a client as to the immigration consequences of a guilty plea does not violate the standards of competence identified in *Strickland*. The Government further argues that *Padilla* is inapplicable to the instant case because Martin was continually and thoroughly advised of the consequences of his guilty plea by his counsel. Martin's attorney, Robert Alvarado, has submitted an affidavit in which he states that he spent a significant amount of time warning Martin about his possible deportation if convicted, that he continually urged Martin to consult a lawyer specializing in immigration issues, that he always advised Martin that he would likely go to prison if convicted and then face a prospect of deportation, and that he never left Martin with the impression that deportation was something he need not worry about. On the other hand, Martin has submitted a

sworn statement signed under penalties of perjury indicating that his counsel did not fully advise him of the immigration consequences of his guilty plea and that counsel misadvised him as to the possible immigration consequences of his plea.[1]

This case presents a "he said, she said" dispute based on the competing affidavits or sworn statements of Martin and Attorney Alvarado. "A section 2255 petitioner is entitled to an evidentiary hearing on his claims when he alleges facts that, if proven, would entitle him to relief." *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994). There is authority supporting the proposition that the affidavit or sworn statement of the petitioner himself is sufficient to entitle him to an evidentiary hearing. *Kafo v. United States*, 467 F.3d 1063, 1068, 1071 (7th Cir. 2006) (noting that a petitioner must provide some evidence beyond conclusory allegations, "even if that evidence is his verified statement alone"); *Heiss v. United States*, 24 F. App'x. 599, 601 (7th Cir. 2001); *United States v. Phillips*, 2004 WL 2491594, at *3 (W.D.Wis. Oct. 28, 2004); *Agunloye v. United States*, 999 F.Supp. 1182, 1184 (N.D.Ill. 1998). Without further factual development, the Court cannot conclude that Martin's counsel rendered ineffective assistance of counsel, and the Court therefore orders an evidentiary hearing limited solely to the issue of whether Martin was informed by his attorney that his guilty plea carried a risk of deportation.

## II.    Federal Rule of Criminal Procedure 11

Martin next argues that Federal Rule of Criminal Procedure 11 was violated when the Court failed to advise him of possible immigration consequences during the plea colloquy. The

---

[1] The Court parenthetically notes that paragraph 47 of Martin's Presentence Investigation Report ("PSR") states, "According to the Department of Homeland Security, Immigration and Custom Enforcement, because of the defendant's conviction in the instant offense, he may be subject to deportation." Presumably, Martin read his PSR and was therefore aware of the risk of deportation as a result of his guilty plea.

8

Government argues in response that a court does not need to inform the defendant about the collateral consequences of a guilty plea, and that possible immigration is such a collateral consequence. In his § 2255 Motion, Martin originally alleges that the Court violated Rule 11 by not informing him of possible immigration consequences, but in his supplemental brief he discusses authority which provides that such consequences are collateral and therefore need not be discussed during a Rule 11 plea colloquy.

      Federal Rule of Criminal Procedure 11 sets forth a number of things a court must inform the defendant of and ensure the defendant understands those things before accepting the guilty plea. *See* FED. R. CRIM. P. 11(b). The rule is "meant to ensure that a guilty plea is knowing and voluntary, by laying out the steps a trial judge must take before accepting such a plea." *United States v. Vonn*, 535 U.S. 55, 58 (2002). The trial court does not, however, have to inform the defendant of the collateral consequences of a guilty plea. *Warren v. Richland County Circuit Court*, 223 F.3d 454, 457 (7th Cir. 2000). At the time Martin was sentenced, it was well settled in the Seventh Circuit that immigration consequences were collateral. *George*, 869 F.2d at 337-38, *overruled on other grounds by Padilla v. Kentucky*, 130 S.Ct. 1473 (2010); *Santos*, 880 F.2d at 944, *overruled on other grounds by Padilla v. Kentucky*; 130 S.Ct. 1473 (2010); *United States v. Montoya*, 891 F.2d 1273, 1293 (7th Cir. 1989).

      Here, the record clearly shows that Martin was given a detailed explanation during the Rule 11 plea colloquy, and that he was questioned as to whether he discussed the worst-case scenario concerning guidelines with his counsel, whether Martin understood his right to plead not guilty, his right to trial by jury, the right to assistance of counsel, and that acceptance of his plea would result in his waiver of the right to a trial and the other rights associated with trial.

(Change of Plea Transcript at 6-8).  The Court further questioned Martin, among other things, as to whether he understood that the acceptance of his guilty plea may deprive him of valuable civil rights, and it discussed special assessment and the Court's authority to order restitution.  *Id.* at 5-6.  Having reviewed the transcript of Martin's Rule 11 hearing, the Court finds that Martin knowingly and voluntarily waived his rights to appeal and collateral attack.  The relevant portions of the Change of Plea hearing transcript provide:

> Q: Now that you have been sworn, do you understand that your answers to my questions are subject to the penalties of perjury or of making a false statement if you don't answer truthfully?
>
> A: Yes, sir.
>
> * * *
>
> Q: Have you been treated recently for any mental illness or addiction to narcotic drugs?
>
> A: No, sir.
>
> Q: Are you currently under the influence of any drug, medication or alcoholic beverage?
>
> A: No, sir.
>
> Q: Have you received a copy of the indictment pending against you -- that is, the written charges?
>
> A: Yes, sir.
>
> Q: Have you fully discussed those charges and the case in general, including any possible defenses that you might have, with Mr. Alvarado as your attorney?
>
> A: Come again, sir.
>
> Q. Have you fully discussed the charges in this case, including any possible defenses that you might have, with Mr. Alvarado?
>
> A. Yes, sir.

> Q: Are you fully satisfied with the counsel, representation and advice given to you in this case by Mr. Alvarado?
>
> A: Yes, sir.
>
> Q: As I understand it, you have no agreement or understanding with the government concerning what your sentence will be if you plead guilty; is that correct?
>
> A: Yes, sir.
>
> MR. ALVARADO: Your Honor, the only agreement is this is a blind plea to Count VI.
>
> THE COURT: Oh, okay. If the Court accepts the plea, then you would dismiss the other counts at the time of sentencing?
>
> MS. KNAUSS: Yes, Your Honor.
>
> THE COURT: All right.
>
> BY THE COURT:
>
> Q. Is that your understanding also?
>
> A: Yes, sir.
>
> Q: Have there been any other promises or assurances of any kind made to you in an effort to induce you to plead guilty?
>
> A: No, sir.
>
> Q. Are you pleading guilty of your own free will because you are guilty?
>
> A. Yes, sir.
>
> * * *
>
> Q. Okay. How do you now plead to the charge of wire fraud as contained in Count VI of the indictment -- guilty or not guilty?
>
> A. Guilty, sir.

(Change of Plea Transcript at 2-4, 27).

The Court did not violate Rule 11 where it engaged in a thorough colloquy with defendant Martin and was not required to inform him of the possible immigration consequences of his guilty plea. *Warren*, 223 F.3d at 457; *see also United States v. Akkaraju*, 97 F. App'x 43, 45 (7th Cir. 2004) (*citing Warren*, 223 F.3d at 457). Because Martin's plea was knowing and voluntary and because the Court did not violate Rule 11, Martin cannot establish that his counsel was ineffective for failing to raise the plea colloquy issue on appeal. His claim that the Court violated the dictates of Federal Rule of Criminal Procedure 11 therefore remains procedurally defaulted.

### III.     Vienna Convention Article 36

Martin finally argues that his counsel and the Court failed to notify him of his right to contact his consulate and that such failure violated Martin's constitutional right under the Vienna Convention. Article 36 of the Vienna Convention Consular Relations ("Vienna Convention") provides that when an individual is detained by authorities in a foreign county, he shall be informed by the authorities of his right to contact his consulate. Vienna Convention, Apr. 24, 1963, [1970] 21 U.S.T. 77, 100-101, T.I.A.S. No. 6820. Claims under Article 36 of the Vienna Convention are subject to the rules of procedural default in federal courts. *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 360 (2006); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). To be entitled to an evidentiary hearing in order to demonstrate prejudice resulting from an Article 36 violation, "a foreign national must 'show a realistic prospect of consular assistance and provide some credible indication of facts reasonably available to him to support his claim.'" *Sandoval*, 574 F.3d at 851 (citing *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008)).

Here, the Government correctly notes that Martin's Article 36 claim is raised for the first time in his § 2255 Motion. The claim is therefore procedurally defaulted. Martin attempts to get

around the procedural default by arguing his counsel was ineffective. He does not make any attempt to argue how his counsel's representation fell below an objective standard of reasonableness and does not attempt to argue how he was prejudiced by the allegedly ineffective assistance. The failure of counsel to advise his or her client of the right to contact his consulate is likely to be considered to fall below an objective standard of reasonableness. *See Osagiede v. United States*, 543 F.3d 399, 411 (7th Cir. 2008) ("[W]e believe that Illinois criminal defense attorneys representing a foreign national in 2003 should have known to advise their clients of the right to consular access and to raise the issue with the presiding judge"). But he only makes the conclusory assertion that his counsel was ineffective for failing to notify him of his Article 36 rights. In neither his Traverse nor supplemental brief does Martin again attempt to argue ineffective assistance of counsel for counsel's failure to notify him of his right to contact his consulate. Because he has not made a showing of a realistic prospect of consular assistance nor provided some credible indication of facts reasonably available to him to support his claim, Martin is not entitled to an evidentiary hearing to establish prejudice under *Strickland*. *See Sandoval*, 574 F.3d at 851. Accordingly, Martin's Article 36 claim remains procedurally defaulted. *Id.*

## CONCLUSION

For the reasons set forth herein, Martin's § 2255 Motion is DENIED IN PART. His claims that Federal Rule of Criminal Procedure 11 and Article 36 of the Vienna Convention were violated are DENIED as procedurally defaulted. The Court orders that Martin, who is in the custody of the Bureau of Prisons, be brought before this Court as expeditiously as possible. When he arrives, the Court will appoint counsel to represent Martin in these proceedings, and will

then set this matter for an evidentiary hearing. The evidentiary hearing will be limited solely to the issue of whether Martin was informed by his attorney that his guilty plea carried a risk of deportation. All relevant witnesses are expected to be present, and the Clerk shall issue a writ for Martin's appearance.

      ENTERED this 25th day of August, 2010.

      s/ Michael M. Mihm
      Michael M. Mihm
      United States District Judge